**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**NICOLE LYNN VEDRODE,**

           **Plaintiff,**        **CIVIL ACTION NO. 13-cv-11420**

    **vs.**

                            **DISTRICT JUDGE STEPHEN J. MURPHY, III**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

           **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Nicole Vedrode seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 19). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.      RECOMMENDATION:**

The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 17) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 19) be GRANTED.

**II.     PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of June 21, 2010, and an application for Supplemental Security Income with a protective filing date of June 29, 2010, alleging in both that she had been disabled since March 8, 2009, due to back-related pain and associated depression and anxiety.  (*See* TR 18, 20.)   The Social Security Administration denied benefits.  (*See* TR 18.)  Plaintiff requested a *de novo* hearing, which was held on January 19, 2012, before Administrative Law Judge (ALJ) Craig Petersen, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 18-26.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review.  The parties then filed their instant Motions.

## III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff was 37 years old at the time of the administrative hearing and 34 years old at the time of alleged onset.  (*See* TR 25.)  Plaintiff testified that she stopped working in March of 2009 due to severe back pain, which eventually resulted in spinal surgery in December of 2010.  (*See* TR 35, 36.) Plaintiff indicated that she did receive some unemployment benefits after her alleged onset date, but she noted that the Michigan Department of Human Services had waived her obligation to seek employment because of her back problems.  (*See* TR 35-36.)  At the time of the hearing, Plaintiff lived with her daughter, who was almost two years old.  (TR 44-45.)  She noted that while she tried to help her child as much as possible, her daughter had generally "learn[ed] to fend for herself," including climbing in and out of her high chair and getting food and juice from the refrigerator.  (TR 45.)  She also told the ALJ that her neighbor "helps [her] a lot."  (TR 45.)

2

Plaintiff testified that her back problems had been going on for several years and that she was receiving cortisone injections for the pain. (TR 36.) In Spring 2009, however, Plaintiff became pregnant, so she stopped her cortisone injections and received massage therapy until her pregnancy had gotten too far along. (TR 36.) Plaintiff had her baby in January 2010, and at that point, she learned that "surgery was the only option" for her back. (TR 37.) Plaintiff told the ALJ that she took vicodin from the time she had her baby until she had her surgery in December 2010. (TR 37.) Unfortunately, Plaintiff testified, while her surgery consisted of a "fusion and screws and a cage," it did not resolve her back problems. (TR 36, 37.) She told that ALJ that she did not get any relief at all; instead, her pain was worse following the surgery. (TR 37; 47-48.) Plaintiff then described her pain:

> It's in my lower back, my right shoulder blade all the way down the right side of my back, my right buttocks, down the back of my right leg, and in my two big toes and my second toe. My right foot falls asleep all the time due it (sic). I have crippling muscle spasms now and all down the right side of my back. If I move just right, I'll have a crippling muscle spasm.

(TR 39.) Plaintiff testified that the muscle spasms lasted about five minutes. (TR 40.) She further testified that she felt pressure when she walked and felt like her "back was going to explode right where the operation was." (TR 48.) She added that she felt a pinching sensation and that her muscle spasms were more frequent (about once an hour) since her surgery. (TR 48.) Plaintiff also testified that in addition to her back-related pain, she suffered from anxiety and depression, which she believed was due to her "back injury . . . just taking over [her] whole life" because she "can't do things that [she] used to be able to do." (TR 41.) She stated that on a good day, her pain was about a five or a six on a ten-point scale, and on a bad day, it was a nine or a ten. (TR 48.) Plaintiff noted as well that her leg would sometimes go numb and give out, which caused her to fall several times. (*See* TR 50-51.)

Plaintiff stated that following her surgery, she started aqua pool therapy, but after four sessions, she found it so painful that she had to stop. (TR 38.) She told the ALJ that the PA in her doctor's office told her that she "was not strong enough yet" to continue therapy. (TR 38.) She also added that she could no longer have cortisone injections. (TR 38.) In an attempt to alleviate her pain, she took 750mg Vicodin three times a day and 800mg Motrin as needed. (TR 40.) She testified that she took a three-hour nap each day and that she tried to keep her feet elevated. (TR 49.) She also told the ALJ that her doctor had limited her to lifting five pounds or less and had restricted her from bending, lifting, reaching, or twisting. (TR 43-44.) She noted that her doctor told her that she was "never going to be able to work again" following her surgery. (TR 43.) With regard to her mental impairments, Plaintiff testified that she had not seen a therapist or a psychiatrist, but her doctor prescribed Clonopin, Paxil, and Xanax, which helped to control her anxiety; Plaintiff noted that her depression was her primary problem. (*See* TR 40-43.)

Plaintiff testified that on a typical day, she would get out of bed and sit in her recliner or put her feet up on her couch. (TR 44.) She told the ALJ that she would sit there until about 1:00 or 2:00 p.m., at which time she would take a three-hour nap. (TR 44.) She noted that she would "stretch it out as long as [she could]" before going to the store, and she would even "prolong and procrastinate [taking] showers." (TR 44.) Plaintiff testified that when she did go to the store, her neighbor would help her carry in her groceries. (TR 44.) She further testified that most of her cooking was done in the microwave and that she had neighbors who mowed her lawn and took out her garbage. (TR 46.) She stated that she had given up all of her hobbies and activities, including working in the garden and running on her treadmill or biking, which she used to do daily. (TR 50.) Plaintiff testified that she had gained weight because should could no longer work out and that her whole life was "very frustrating." (TR 50.)

4

**B.      Medical Record**

Plaintiff (docket no. 17 at 7-10), Defendant (docket no. 19 at 9-12), and the ALJ (TR 23-24) each set out a factual background related to Plaintiff's medical record.  Although focused on different portions of the record, the Court finds that there are no inconsistencies between the three accounts; thus the Court will incorporate them by reference herein.  The undersigned has, however, conducted an independent review of Plaintiff's medical record and will include comments and citations as necessary throughout this Report and Recommendation.

**C.      The Vocational Expert**

The ALJ first asked the VE to consider a hypothetical person of Plaintiff's age, education, and vocational experience who was limited to sedentary work with the following additional restrictions:

> . . . . [T]his individual would have to alternate sitting and standing.  They would be unable to climb ladders, ropes or scaffolds, kneel or crawl.  Limited to occasional climbing of stairs and ramps, balancing, stooping, crouching.
>
> Limited to simple work performed in a low-stress work environment which would be defined as work requiring no more than occasional decision making, changes in the work setting or use of independent judgment.

(TR 53.)  When asked, the VE testified that such an individual could not perform any of Plaintiff's past relevant work, but she could perform work as an inspector, a packager, or a bench assembler, with 6,500 such jobs in the State of Michigan.  (TR 53-54.)

The ALJ then asked the VE to assume that this same individual "would have to sit in a reclined position with their feet elevated to waist level . . . between 3-4 hours of a regular eight-hour workday."  (TR 54.)  The ALJ asked the VE if such a person could perform any competitive work; the VE testified that she could not.  (TR 54.)  The VE also testified that an individual could not perform any competitive work if they were off-task 25% of the workday or absent more than one

5

unexcused day per month.  (TR 54-55.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2013; that she had not engaged in substantial gainful activity since March 8, 2009, the date of her alleged onset; and that she had severe lumbar herniated nucleus pulposus status-post surgery, mood disorder, and anxiety disorder.  (TR 20.)  The ALJ further found that her impairments did not meet or equal those listed in the Listing of Impairments.  (TR 21-22.)  The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not credible and that Plaintiff had the ability to perform sedentary work with the following additional limitations:

> [The claimant] must be allowed to alternate between sitting and standing.  She is unable to kneel, crawl, or climb ladders, ropes, and scaffolds.  The claimant can occasionally balance, stoop, crouch, and climb ramps and stairs.  She is limited to simple work, performed in a low stress work environment.  A low stress work environment is defined as work requiring no more than occasional decision-making, changes in work setting, or the use of independent judgment.

(TR 22-25.)  The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 25-26.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from March 8, 2009, through the date of the ALJ's decision.  (TR 26.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525,

528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

7

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

## C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should

8

be reversed or remanded because the ALJ (1) erred in assessing Plaintiff's credibility; (2) made an improper RFC finding; and (3) failed to properly weight the medical opinions of record. (Docket no. 12 at 12-26.)

### 1.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff asserts that the ALJ's credibility finding is flawed because "a closer look at the evidence of record shows that Plaintiff's medical impairments are clearly documented objectively and supported further by her testimony during the hearing." (Docket no. 17 at 13.) But such a review is beyond the scope of this Court's inquiry, which only looks to determine if the ALJ's decision is supported by substantial evidence. In that light, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).

Nevertheless, credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not

9

reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Contrary to Plaintiff's assertion, however, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight the he gave to Plaintiff's statements and the reasons for that weight. In addition to specifically discussing Plaintiff's testimony and her medical record, the ALJ summarized his credibility findings as follows:

> The undersigned used factors considered under SSR 96-7p in determining the credibility of the claimant's allegations. After her surgery, the claimant did not comply with recommended follow up treatment (10F, p.4). Additionally, for her mental impairments, the claimant did not seek counseling. She is able to take care of her personal needs and take care of her child (4E, p.7; Cl. Testimony). The claimant is also able to go shopping and spend time with others (4E, p.8, Cl. Testimony). These findings are not consistent with her complaints of disabling pain, but rather tend to support the limitations in the [RFC].

(TR 24.) While Plaintiff does point to evidence in support of her assertions, the ALJ provided a detailed analysis and more than a scintilla of evidence to support his conclusion. Thus, even if the Court would decide the matter differently, there is substantial evidence to support the ALJ's determination, and his decision must be affirmed; Plaintiff's Motion should be denied with regard to this issue.

10

2.    **The ALJ's Assessment of the Medical Opinions of Record**

Plaintiff asserts that the ALJ erred when he gave the opinion of Plaintiff's treating physician, Dr. Adams, "considerable weight . . . to the extent it is consistent with the medical evidence of record," including a finding that "claimant [is limited] to sedentary lifting and carrying with postural limitations," but also gave the same opinion "little weight to the extent the opinion is read as consistent with disability, as this is an opinion reserved to the Commissioner." (Docket no. 17 at 24 (quoting TR 24).) Plaintiff argues that such a determination was improper because the ALJ was not permitted to pick and choose the part of the opinion on which he relied. (*Id.* at 25.)

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). But it is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

Additionally, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record,

11

and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural

safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

As Plaintiff acknowledges, the ALJ gave "great weight" to Dr. Adams's opinion, except to the portion that, as the ALJ described it, "noted that the claimant is not able to work." (TR 24.) Contrary to Plaintiff's assertion, the ALJ was not required to give controlling weight to the portion of Dr. Adams's opinion that claimant was "not able to work" because such a determination, which is "consistent with disability," is reserved for the commissioner. The ALJ then gave "moderate weight" and "little weight" to the opinions of the two medical consultants. (TR 24.) Thus, the ALJ gave controlling weight to Dr. Adams's opinion; Plaintiff's Motion should be denied with regard to this issue.

### 3.      Plaintiff's RFC

Plaintiff argues, in general, that the ALJ's RFC determination was improper, but the ALJ is only required to incorporate in a claimant's RFC (and the hypothetical questions to the VE) those limitations that the ALJ finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ included in Plaintiff's RFC those limitations that the ALJ found credible. Thus, in substance, Plaintiff's assertion that the RFC is inaccurate is merely a collateral attack on the ALJ's decision not to credit Plaintiff's testimony and his determination with regard to Dr. Adams's opinion, both of which are addressed by Plaintiff's prior arguments.

## VI.      CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 17)

should be DENIED and Defendant's Motion for Summary Judgment (docket no. 19) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.   The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.   The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 8, 2014                      s/ Mona K. Majzoub
                                           MONA K. MAJZOUB
                                           UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

       I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 8, 2014            s/ Lisa C. Bartlett
                                      Case Manager